UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

Civil Action No. 17-227

CHARLES LEON JONES,                                                   PLAINTIFF,

v.                     <u>MEMORANDUM OPINION AND ORDER</u>

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits and supplemental security income benefits in July 2011, alleging disability beginning on July 1, 2011, due to nerve damage, disc problems in his lower back and depression (Tr. 245). He later amended his date of alleged onset to June 21, 2015 (Tr. 57).

His application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Greg Holsclaw(hereinafter "ALJ"). At the hearing, Jackie Rogers, a vocational expert (hereinafter

"VE"), appeared and testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled. Plaintiff has a 9th grade education and past relevant work as a forklift operator, merchandise deliverer and cigarette stamping machine off-bearer (Tr. 281). He was 45 years old on the alleged disability onset date (Tr. 32).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 26). Plaintiff provided varying accounts of why he stopped working in 2011. He testified at the hearing that he stopped working because he injured himself in June 2011, by falling while carrying a basket of laundry

2

(Tr. 55). But in August 2014, Plaintiff reported he quit his job in 2011, because the "company sold out" (Tr. 423).

The ALJ then determined, at Step 2, that Plaintiff suffers from degeneration of the lumbar spine and depression, which he found to be "severe" within the meaning of the Regulations (Tr. 26).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 26-28).

The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 32) but determined that he has the residual functional capacity ("RFC") to perform "light work" as it is defined in the regulations, but that he had additional limitations. (Tr. 28). The ALJ found that Plaintiff was further limited to: "no standing/walking for more than four hours out of an eight-hour day, and for no more than 30 minutes at one time; no sitting more than six hours out of an eight-hour day, and for no more than 30 minutes at one time; . . . must use a cane for walking on level services, but not for balance." *Id.* The ALJ also found that Plaintiff was mentally limited to: no more than simple, routine work; can persist in attention, concentration and pace for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-worker or supervisor, but [sic] no more than occasional contact with the general public; and no more than occasional changes in the workplace setting." *Id.*

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 33-34).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner . Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly consider the state agency's medical opinions in the record and (2) the ALJ

4

erroneously applied the "light" occupational base in formulating the RFC.

## C. Analysis of Contentions on Appeal

Plaintiff first contends that the ALJ did not properly consider the medical evidence in the record.

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, we must first determine the medical source's classification," *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), as "not all medical sources need be treated equally," *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Id.* at 875. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir.2012) (noting that a nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source). But "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such instance is where the "[s]tate agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory

5

findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to opinions that are "more consistent ... with the record as a whole," *id.* § 404.1527(c)(4), and opinions of "a specialist about medical issues related to his or her area of specialty." *Id.* § 404.1527(c)(5).

Plaintiff contends that the ALJ did not properly assess his mental impairments as well as his back problems. Notably, none of the physicians who *treated* Plaintiff offered opinions that he had work limitations, either mental of physical. It is the state agency physicians who offered differing opinions, based upon a single examination or review of Plaintiff's records. Based upon the record, however, it is clear that the ALJ properly considered these opinions and gave them appropriate weight.

At the Agency's behest, Lisa King, PsyD., HSP, a Licensed Psychologist, conducted a clinical interview and mental status examination, and directly observed Plaintiff on March 5, 2013. (Tr. 362-64). She observed that Plaintiff was depressed, and that he walked with an atypical gate, supported by a cane. (Tr. 362). Plaintiff reported that he was struggling with depression and anxiety and this his chronic lower back pain was making it difficult for him to sleep. *Id.* He complained of low energy and decreased appetite, and reported losing 20 pounds. *Id.* Plaintiff felt guilty, was having difficulty concentrating, and worried about his family and his finances. *Id.* He admitted to having suicidal thoughts. *Id.* Based on her interview, examination, and personal observations, Dr. King concluded that Plaintiff has "major depressive disorder, recurrent, moderate," that affects his functionality. (Tr. 364-65). According to Miss King, Plaintiff's depression markedly limits in his ability to tolerate the stress and pressure of day-to-

6

day employment and moderately limits his capacity for understanding, remembering, and carrying out instructions toward performance of simple repetitive tasks; his ability to sustain attention and concentration toward performance of simple repetitive tasks; and his capacity for responding appropriately to supervisors and coworkers in a work setting. *Id.* She opined that, without adequate mental health treatment, his prognosis is guarded; with such treatment, his prognosis is only fair. *Id.*

The ALJ found that Miss King's assessment or marked limitation was inconsistent with her finding that Plaintiff seemed to have a normal capacity for organization, planning, and decision making and that he would have only some difficulty coping with job-related stress (Tr. 31, *see* Tr. 364). *See* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider consistency); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."). The ALJ also suggested that her opinion assigning marked limitations would be consistent with more serious symptoms, rather than the moderate symptoms indicated by Plaintiff's GAF score of 55 (Tr. 31).

Plaintiff underwent a second psychological consultative examination, again at the Agency's request, with Licensed Clinical Psychologist Christi M. Hundley, Ph.D. (Tr. 422-24.) Although Plaintiff denied that he was having problems with depression, he admitted to being short tempered, getting only 2-3 hours of sleep per night, and having a limited appetite. (Tr. 423). He reportted that used to eat a lot, he now only eats once per day. *Id.* The symptoms began a few months after his 2011 fall, and directly correspond to his pain level. *Id.* According to Doctor Hundley, Plaintiff's "ability to understand and remember simple instructions is fair and his

7

ability to maintain attention and concentration is fair to guarded and likely impacted by his level of physical discomfort." (Tr. 424). Further, his ability to "interact appropriately in a work setting is fair and his ability to handle the stresses typically associated with a work environment is fair to guarded." *Id.*

The ALJ gave Doctor Hundley's assessment only partial weight as Plaintiff had not obtained any mental health treatment at all (Tr. 30). Indeed, as the ALJ noted, records from Hope Clinic show Plaintiff denied depression (Tr. 408), and no treating provider recommended he pursue any kind of treatment for anxiety and depression.

Further, Doctor Hundley's opinion was inconsistent with her own examination findings. She specifically noted that Plaintiff was alert, pleasant, cooperative, and oriented and he had coherent and relevant speech, adequate form of thought. His mood appeared neutral and his range of affect was appropriate (Tr. 422). Plaintiff's memory was intact and he could perform simple calculations (Tr. 422-23). Plaintiff also had normal abstract reasoning (Tr. 423). *See Payne v. Comm'r of Soc. Sec.*, 402 F.App'x 109, 112-13 (6th Cir. 2010) (ALJ may discount treating physician's opinions that are inconsistent with physician's own treatment notes).

A review of the decision establishes that the ALJ gave adequate reasons supported by substantial evidence for the weight he assigned to the opinions of King and Hundley. To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors her claim, the Court declines to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005). Even if substantial evidence exists to support Plaintiff's claim, the Court should still affirm the

8

Commissioner's decision because it is supported by substantial evidence. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed.)

As for Plaintiff's back impairment, despite his complaints of a debilitating back injury in 2011, there is no evidence in the record showing any contemporaneous treatment for it. It was not until April 2012, that Plaintiff underwent an MRI, which showed a disc protrusion and generally mild findings (Tr. 334). The only treatment Plaintiff subsequently pursued was the procurement of narcotic pain medications from various medical providers (Tr. 347-61, 367-426-39). Plaintiff went for long periods of time when he received not treatment. Based upon the record, he was last treated at the Hope Clinic in June 2014, but did not seek further care until he saw Dr. Mick a year later in June 2015 (Tr. 439). When he was in treatment, Plaintiff consistently reported that the narcotics provided significant relief from his pain (Tr. 379, 381, 383, 386, 389, 393, 395, 397, 399, 405, 438). Notably, records from the Estill Clinic and the Hope Clinic showed evidence that Plaintiff was misusing the narcotic pain medication. In July 2013, Plaintiff's pill count was short by about four (Tr. 369). A year later, the Hope Clinic received a report from an individual alleging Plaintiff was selling his Oxycodone. A clinic employee attempted to perform a pill count at Plaintiff's residence, but was unable to make contact with him (Tr. 378). Significantly, none of the providers concluded Plaintiff had any ongoing work limitations, much less disabling ones.

Numerous disparities in the evidence further detract from the credibility of Plaintiff's complaints of disabling back impairment. Plaintiff claimed in his application materials that he

9

stopped working because of his back pain (Tr. 245), but he told Doctor Hundley that he quit his job because the "company sold out" (Tr. 423). Plaintiff also related varying accounts of his back injury. He has reported that he had experienced back pain since the 1990s (Tr. 347, 407), but has conversely reported that his pain first began in 2011 (Tr. 426-39). Plaintiff claimed that physical therapy had not helped (Tr. 60-61, 439), but also told Dr. Baird that his symptoms improved with physical therapy (Tr. 347). Plaintiff told Miss King that his doctors had restricted him from bending and lifting no more than 10 pounds, as well as limitations on the amount of time he sits or stands (Tr. 362), but Doctor Hundley stated Plaintiff did not indicate a doctor had restricted his activity (Tr. 422).

In light of all these inconsistencies as well as the salient facts in the record, the ALJ reasonably concluded that Plaintiff's back impairment did not preclude him from performing work related activity.

Plaintiff's second claim of error presumes that the ALJ's findings are based upon substantial evidence, but, the ALJ still erred because the decision to deny benefits based upon a "light" RFC finding is contrary to law.

It is well established that The responsibility for determining a claimant's RFC is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545. The ALJ considers numerous factors in constructing a claimant's residual functional capacity, including the medical evidence, the non-medical evidence, and the supportability of claimant's subjective complaints. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (unpublished). In making this determination, the ALJ is required to resolve conflicts in the evidence and incorporate only those limitations that he finds credible in the residual functional capacity

assessment. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234-1235 (6th Cir. 1993).

Notably, none of the doctors who treated Plaintiff offered an opinion that Plaintiff had any physical or mental work-related limitations, much less that he was disabled, which supported the ALJ's decision that Plaintiff was not disabled.

Nonetheless, Plaintiff challenges the ALJ's determination that he was capable of "light work" rather than "sedentary" work, and maintains that the ALJ should have applied Rule 201.10 of the sedentary Grids to find him disabled. He argues that the definition of "light work" exceeds his capabilities because it requires "frequent lifting or carrying," which means "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10, 1983 WL31251 at *6.

However, the ALJ determined Plaintiff could not stand or walk for more than 4 hours of an 8-hour work-day. Yet, itt does not necessarily follow that his classification must then have been "sedentary," the next step below "light work." SSR 83-10 defines "sedentary work" as requiring that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." 1983 WL31251 at *5. Thus, his capabilities with respect to how many hours he could stand or walk per day exceeded the "sedentary" classification.

In these circumstances, where the claimant's exertional abilities fell between two grid rules, the ALJ consulted a vocational expert to determine if jobs existed in the national economy that Plaintiff could perform, which the record shows he did. Thus, that Plaintiff could not stand or walk for a total of approximately 6 hours of an 8-hour workday would not, by itself, be a sufficient basis to vacate the ALJ's "light work" determination because that fell between the

11

"sedentary" and "light work" requirements, and the ALJ correctly looked to a vocational expert for assistance.

Moreover, the ALJ's assessment that Plaintiff had the ability to stand/walk for four hours per workday clearly exceeds the two-hour period prescribed for sedentary work. *See* SSR 83-10, 1983 WL 31251 at *5 (stating standing or walking in sedentary work "should generally total no more than about 2 hours of an 8–hour workday").

Thus, the ALJ did not err by not applying the Grid rules relating to an individual whose maximum sustained work capability is limited to sedentary work.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 25th day of April, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge